UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ELDER BENJAMIN ORTIZ SINTUJ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   No. 2:26-cv-00027-JAW |
| | ) |
| DERRICK STAMPER, *in his* | ) |
| *official capacity Chief Patrol Agent,* | ) |
| *U.S. Border Patrol*, et al., | ) |
| | ) |
| Respondents. | ) |

**ORDER**

The court finds that the Government's release of the petitioner in Youngstown, Ohio violated this court's order requiring the Government to return the petitioner from Louisiana to Maine. After discussion with counsel, the court concludes the Government did not violate the court's order in bad faith and an award of attorney's fees and costs will suffice to address the Government's violation, along with an order that the Government may not re-detain the petitioner without providing prior notice to his counsel.

**I.   BACKGROUND**

    **A.   Elder Benjamin Ortiz Sintuj's Petition for Writ of Habeas Corpus**

Elder Benjamin Ortiz Sintuj, a resident of Middlesex County, Massachusetts, is a Guatemalan citizen who arrived in the United States in March 2023. *Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* ¶¶ 1-2 (ECF No. 1) (*Pet.*). On January 15, 2026, U.S. Immigration and Customs Enforcement (ICE) arrested and

detained Mr. Sintuj while he was working at a construction site in Bethel, Maine. *Id.* ¶ 3. On January 18, 2026, alleging his immigration detention violates federal law and the United States Constitution, Mr. Sintuj filed a verified petition for writ of habeas corpus and an emergency motion for a temporary restraining order blocking his removal from the District of Maine. *Pet.* at 1-11; *Emer. Mot. for TRO to Stop Transfer Without Prior Consent* (ECF No. 3). Mr. Sintuj's petition sought, among other remedies, an order requiring an Immigration Judge to provide him with a bond hearing as soon as possible, or in the alternative, a writ of habeas corpus ordering his immediate release during his habeas proceedings. *Id.* 10-11. That same day, the Court issued a forty-eight-hour emergency order, enjoining Respondents from transferring Mr. Sintuj outside the District of Maine. *Emer. Order Concerning Stay or Transfer of Removal* (ECF No. 4).

At the teleconference of counsel on January 20, 2026, Respondents informed the Court that although Mr. Sintuj was physically in Maine when the habeas petition was filed at 11:22 a.m. on Sunday, January 18, 2026, before the Court issued its emergency order 2:45 p.m. the same day, Respondents had already transferred Mr. Sintuju outside the state of Maine on a flight to Jackson Parish Correctional Center in Jonesboro, Louisiana "roughly two hours before the Court's issuance of the Emergency Order" *Return and Resp. to O.S.C. in Opp'n to Pet. for Writ of Habeas Corpus* at 1 (ECF No. 10) (*Resp'ts' Opp'n*); *Min. Entry* (ECF No. 7).

Given this development, Respondents conceded the Court's jurisdiction, and the parties agreed to amend Mr. Sintuj's motion for TRO to block his removal from

2

the country and ensure his reasonable access to counsel. *Min. Entry*. The parties also agreed there were no factual disputes for the Court to resolve in this matter and stipulated to the facts in Mr. Sintuj's verified petition and its exhibits. *Id.*

On January 21, 2026, the Court ordered Respondents to show cause why Mr. Sintuj's petition should not be granted, including whether the Court can and should order Mr. Sintuj's return to the District of Maine, *O.S.C.* (ECF No. 8), and issued a TRO blocking Respondents from removing Mr. Sintuj from the United States and ordering Respondents provide Mr. Sintuj with reasonable access to counsel during his period of detention. *Order on Mot. for TRO* (ECF No. 9) (*TRO*). That same day, Respondents filed their response to the show cause order, opposing Mr. Sintuj's petition, *Resp'ts' Opp'n*, and Mr. Sintuj filed his reply. *Pet'r's Reply to Resp'ts' Resp. to O.S.C.* (ECF No. 11).

B.    **The Court's January 28, 2026 Order**

On January 28, 2026, the Court granted in part and deferred in part Mr. Sintuj's petition for writ of habeas corpus. *Order Granting Pet. for Writ of Habeas Corpus* (ECF No. 13) (*Order*). The Court ordered Respondents to return Mr. Sintuj to Maine within five days of the date of the order and to submit within seven days an affidavit or sworn declaration confirming the exact time of Mr. Sintuj's departure from the District of Maine on January 18, 2026. *Id.* at 14.

Given concerns about a delayed return from a similar case, *DuPont v. Meserve*, 2:25-cv-00593-JAW, the Court's order explained it would schedule a teleconference with counsel to "discuss logistics and timing" to avoid "a roundabout and delayed

return from Louisiana to Maine." *Id.* at 14 n.2. The Court suggested that an alternative to the Government itself returning Mr. Sintuj to Maine would be to release him on personal recognizance so that he return to Massachusetts and obtain his bond hearing there. The Court expressed reluctance to order this alternative without "discuss[ing] . . . with counsel at the to-be-scheduled conference." *Id.* The Court otherwise deferred additional action on the merits of the petition. *Id.* at 14-15. The Clerk's Office scheduled the teleconference for Friday, February 6, 2026, *Min. Entry* (ECF No. 16), and Judgment issued on January 29, 2026. *J.* (ECF No. 14).

### C. Elder Benjamin Ortiz Sintuj's Release in Youngstown, Ohio and Respondents' Sworn Declaration

On February 3, 2026, Respondents filed a status report, representing that ICE had transferred Mr. Sintuj from custody in Louisiana to ICE custody at the Mahoning County Jail in Youngstown, Ohio at which point they released Mr. Sintuj out of concern that his transfer to Maine would not be completed by the February 2 deadline. *Status Report and Notice of Correction* at 2 (ECF No. 16) (*Status Report*).

Respondents also provided a sworn declaration from Border Patrol Agent Jonathan W. Lemay, correcting previous information Respondents had supplied to the Court about the timing of Mr. Sintuj's transfer from the District of Maine. *Id.*, Attach. 1 *Decl. of Jonathan M. Lemay* (*Lemay Decl.*). Agent Lemay explained that at approximately 9:00 a.m. on January 18, 2026, U.S. Border Patrol drove Mr. Sintuj over the Maine border into New Hampshire and that the previously referenced ICE flight departed Massachusetts between 10:15 a.m. and 1:30 p.m. *Lemay Decl.* ¶¶ 7-

10. Based on Agent Lemay's statement, Respondents averred Mr. Sintuj filed his petition in the District of Maine after he had left its jurisdiction. *Status Report* at 3.

**D.    The February 3, 2026 Teleconference of Counsel**

On February 6, 2026, the Court held a teleconference of counsel. *Min. Entry* (ECF No. 18). The Court first asked for information about Mr. Sintuj's release and his current whereabouts. Counsel informed the Court that, upon Mr. Sintuj's release in Ohio, a third-party volunteer assisted Mr. Sintuj in purchasing a bus ticket home to Massachusetts, where he remains released. *Id.* Counsel stated that, to the best of their knowledge, Respondents did not provide Mr. Sintuj with any documentation imposing conditions of release. *Id.* Respondents conceded Mr. Sintuj's release in Ohio violated the Court's January 28, 2026 order to return Mr. Sintuj to Maine by the end of the day on February 2, 2026 and explained that their violation was not in bad faith, but rather a product of the agency being disorganized and overwhelmed, in combination with their concern that they would be in violation of the Court's January 28, 2026 order if they did not release Mr. Sintuj on February 2, 2026, regardless of whether he had returned to Maine. *Id.*

Considering Respondents' violation and Mr. Sintuj's release and return home, the Court asked counsel about what additional process, if any, remained. *Id.* Mr. Sintuj requested a court order confirming his release on personal recognizance, blocking Respondents from re-detaining Mr. Sintuj without prior notice to his counsel, as well as attorney's fees and costs. *Id.* Respondents agreed to Mr. Sintuj's

proposed order and stated that they would not raise any jurisdictional challenges related to the timing of Mr. Sintuj's transfer outside of the District of Maine. *Id.*

## II. DISCUSSION

The Court accepts the representations of counsel concerning the events surrounding Mr. Sintuj's initial transfer outside the District of Maine and his release in Youngstown, Ohio. Concerning Mr. Sintuj's transfer outside the District of Maine before he filed his petition, the Court accepts Respondents concession of habeas jurisdiction. As a general rule, a habeas petitioner must file his petition in the district where he is confined. *Rumsfeld v. Padilla*, 542 U.S. 426, 442-47 (2004); *see also* 28 U.S.C. § 2241 ("Writs of habeas corpus may be granted by . . . the district courts within their respective jurisdictions" when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States"). Because the district of confinement rule is "not jurisdictional in the sense of subject-matter jurisdiction," *Padilla*, 542 U.S. at 434 n.7, but rather "a question of personal jurisdiction or venue," "objections to the filing of petitions based on those grounds can be waived by the Government." *Id.* at 451-52 (KENNEDY, J., concurring) (citations omitted).

The Court also accepts Respondents' concession that Mr. Sintuj's release in Youngstown, Ohio violated the Court's January 28, 2026 order but that it was not done in bad faith. As the Court's January 28, 2026 order plainly states, the Court did not order Mr. Sintuj's release in Youngstown, Ohio. Rather, it ordered his return to Maine.

Respondents do not contest the clarity and unambiguity of the Court's order. *AccuSoft Corp. v. Palo*, 237 F.3d 31, 47 (1st Cir. 2001). Nor do Respondents suggest that they lacked notice or the ability to comply with the order. *See United States v. Rylander*, 460 U.S. 752, 757 (1983); *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir. 1991). Indeed, had Respondents informed the Court they were returning Mr. Sintuj to Maine but needed additional time to do so, the Court likely would've granted them more time, if they had filed a motion requesting additional time to comply with the order. Lastly, viewed in one way the Respondents' release of Mr. Sintuj on February 2, 2026 afforded him greater relief than the Court ordered in its January 28, 2026 order, because the Respondents released him without condition, rather than returned him to Maine in detention subject to a bond hearing. Even though the Respondents' release of Mr. Sintuj at 8:30 a.m. in a city in Ohio with which he had no known connection clearly violated the Court's order, in combination with Respondents' representations that their violation of the order was due to organizational dysfunction, the Court does not conclude Respondents violated the January 28, 2026 order in bad faith.

As the parties agreed, the Court finds an award of attorney's fees and costs the appropriate sanction for Respondents' violation of the Court's January 28, 2026 order. *See Mullane v. Chambers*, 333 F.3d 322, 338 (1st Cir. 2003) (Courts enjoy "broad deference" in determining whether sanctions are appropriate). The Court will therefore order Respondents compensate Mr. Sintuj for reasonable attorney's fees and costs for his entire representation. *See Estate of McIntyre v. United States*, 739

7

F. Supp. 2d 70, 75 (D. Mass. 2010) (holding the Government liable for reasonable attorney's fees and expenses for the entirety of the litigation). The Court finds that attorney's fees and costs for the entire representation are appropriate in this case for two reasons. First, at the February 6, 2026 teleconference, Respondents agreed this was the appropriate sanction. Second, Respondents' violation of the Court's order arises from their conduct throughout the litigation. From the outset of this case, Respondents repeatedly failed to accurately inform the Court and opposing counsel of its own conduct in this matter, including the timing and location of Mr. Sintuj's whereabouts, transfers, and release.

Finally, because Respondents released Mr. Sintuj without conditions, the Court accepts the Respondent's apparent determination that conditions of release are unnecessary for Mr. Sintuj, and the Court will not impose any ongoing conditions on Mr. Sintuj's continued release. However, as the Court is wary of allowing the Respondents to re-detain Mr. Sintuj without some protection, *see Jean Dupont v. Hamilton Meserve*, 2:25-cv-00593-JAW (ICE re-detained noncitizen within forty-eight hours of the Court releasing him), the Court is ordering the Respondents to give Mr. Sintuj's counsel at least forty-eight hours prior notice before it detains him in the future.

### III.   CONCLUSION

Accordingly, the Court ORDERS Elder Benjamin Ortiz Sintuj released on personal recognizance, subject to standard conditions of release on recognizance. The Court further ORDERS Respondents may not re-detain Mr. Sintuj without at least

forty-eight hours prior notice to his counsel. Lastly, the Court ORDERS Mr. Sintuj is entitled to reasonable attorney's fees and costs, including the cost of the bus ticket from Youngstown, Ohio to Massachusetts, and ORDERS he file a proper motion with this Court within seven days of the date of this order, and ORDERS Respondents to file any objection within seven days of the date of counsel's filing.

    SO ORDERED.

                                          /s/ John A. Woodcock, Jr.
                                          JOHN A. WOODCOCK, JR.
                                          UNITED STATES DISTRICT JUDGE

Dated this 6th day of February, 2026